**UNITED ROPE DISTRIBUTORS, IN-CORPORATED, Plaintiff–Appellant,**

v.

**SEATRIUMPH MARINE CORPORA-TION, Defendant–Appellee.**

No. 89–2592.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1991.

Decided April 12, 1991.

Rehearing and Rehearing En Banc
Denied May 9, 1991.

David W. Neeb, Davis & Kuelthau, Milwaukee, Wis., Douglas R. Burnett, Alan S. Loesberg, Robert G. Clyne, Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, for plaintiff-appellant.

Robert Elliott, Cook & Franke, Milwaukee, Wis., for defendant-appellee.

Before COFFEY and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

United Rope Distributors, a Minnesota corporation, bought 300,000 bales of baler twine in Brazil. Farmers use baler twine to tie bales of agricultural products; United Rope's order covered approximately 30% of the nation's annual consumption of this twine. United Rope approached a New York shipping broker, which booked passage from the Kimberly Line, a New York corporation. Kimberly chartered a ship from Copenship A.S., a Danish corporation. Copenship in turn chartered the M.V. KATIA, a Liberian vessel, from Seatriumph Marine, a Liberian corporation with its principal place of business in Greece. Seatriumph had financed the purchase of the KATIA with a loan from a New York bank. The KATIA picked up the 6,000 tons of twine from Sisalana S.A. (United Rope's parent) in Salvador, Brazil. On November 5, 1988, the Brazilian stevedore contractor, acting on authorization of the KATIA's master, signed six bills of lading establishing contractual obligations from Seatriumph to United Rope. The bills of lading contain forum selection clauses providing that any dispute shall be decided "in the country where the carrier has his principal place of business". The KATIA's Filipino crew and Indian officers set sail for the Great Lakes. The ship sank in heavy weather on November 26, 1988, off Halifax, Nova Scotia, Canada. United Rope's Swiss insurer paid the claim for the lost cargo and was subrogated to its rights. After obtaining an injunction in Italy blocking Seatriumph's insurer from disbursing the proceeds of the KATIA's hull insurance pending determination of responsibility for the loss of the cargo, United Rope filed suit—in Wisconsin.

■ Wisconsin could be at best a waystation, until the forum selection clause or the doctrine of *forum non conveniens* sent the case somewhere else. But is it even a lawful starting point? The district court thought not, dismissing the suit on the ground that Seatriumph had so few "contacts" with Wisconsin that the due process clause of the fifth amendment forbids the exercise of jurisdiction there. Seatriumph, a one-ship corporation, did no business in Wisconsin. The KATIA had never visited Wisconsin, coming no closer than Duluth, Minnesota, to which it delivered a cargo of beans in 1987. United Rope's only strand tying Seatriumph to Wisconsin is that the bills of lading called for delivery f.o.b. "Superior—U.S.A.". The KATIA was to land the twine in Superior, Wisconsin, from which it would go overland to United Rope's customers, two of them located in Wisconsin. Duluth and Superior straddle the Minnesota–Wisconsin border, and some stevedores serve both ports, but Minnesota is not Wisconsin. So the standard bases of personal jurisdiction are missing. But Wis. Stat. § 801.05(5)(c), part of its long-arm statute applicable by virtue of Fed.R.Civ.P. 4(e), establishes jurisdiction when the claim "[a]rises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to deliver ... within this state goods, documents of title, or other things of value". United Rope contends, and Seatriumph does not

deny, that the bills of lading that Seatriumph's agent signed in Brazil are promises to deliver goods in Wisconsin, and that these promises were made "for the plaintiff's benefit". This part of the Wisconsin code is unconstitutional, the district court held, as applied to a marine carrier whose ship never reaches Wisconsin.

■ United Rope stresses that Duluth is right across the border from Wisconsin, but close counts only in horseshoes. That two citizens of Wisconsin wanted to take delivery out of the shipment aboard the KATIA has nothing to do with Seatriumph. A consignee of a bill of lading cannot subject the vessel to an unknown forum by its contracts for resale. Seatriumph had no "contacts" at all with Wisconsin, having failed in its promise to acquire the first by putting the twine ashore there. The due process clause therefore would not allow the State of Wisconsin to exercise personal jurisdiction over Seatriumph. See, e.g., *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ Yet United Rope did not commence this suit in Wisconsin's courts. It filed in a federal court, invoking the protection of federal law—the law of admiralty and the Carriage of Goods by Sea Act, 46 U.S.C.App. §§ 1300–15, which governs the KATIA's journey according to the terms of the bills of lading. We observed in *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir.1987), that the "minimum contacts" cases such as *Helicopteros Nacionales*

> require only sufficient contacts between the defendant (or the defendant's transactions) and the forum. The question is whether the polity, whose power the court wields, possesses a legitimate claim to exercise force over the defendant. A state court may lack such an entitlement to coerce, when the defendant has transacted no business within the state and has not otherwise taken advantage of that sovereign's protection.... A federal court in a federal question case is not implementing any state's policy; it exercises the power of the United States.

When a national court applies national law, the due process clause requires only that the defendant possess sufficient contacts with the United States. Whether the forum within the United States is convenient for the defendant is a question of venue and discretionary doctrines allowing transfers; it has nothing to do with judicial power. *United States v. Union Pacific R.R.*, 98 U.S. 569, 603–04, 25 L.Ed. 143 (1878); *Fitzsimmons v. Barton*, 589 F.2d 330, 332–34 (7th Cir.1979); *Lisak*, 834 F.2d at 671–72. Seatriumph has ample contacts with the United States. The KATIA made four voyages to seven different U.S. ports in 1986–87 and was bound for a fifth encounter, at an eighth port, when it sank. Seatriumph signed bills of lading submitting to the substantive law of the United States, as it submitted to U.S. law when borrowing in the United States the money to finance the KATIA's purchase. The United States is entitled to exercise sovereignty over vessels bound for its ports, even though they sink or are intercepted before reaching our territorial waters. E.g., *United States v. Maynard*, 888 F.2d 918 (1st Cir.1989); *United States v. Romero–Galue*, 757 F.2d 1147 (11th Cir.1985); *United States v. Columba–Colella*, 604 F.2d 356, 358 (5th Cir.1979). See also *Restatement (3d) of Foreign Relations* § 402 (1987).

■ May United Rope take advantage of these national contacts to rope the case into federal court in Wisconsin? The COGSA does not authorize service of process; neither does any other pertinent federal statute. United Rope asks us to establish a federal common law of personal jurisdiction for admiralty cases. *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1143 n. 2 (7th Cir.1975), reserves the possibility of taking such a step. Perhaps it would be a good idea to have a uniform national rule for personal jurisdiction in admiralty and COGSA cases. *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987), squelches any move along these lines, however. *Omni* holds that personal jurisdiction may be created only by statute or federal rule with the force of statute.

The claim in *Omni* arose under a federal law that lacked a provision creating personal jurisdiction. State law did not create personal jurisdiction either. 484 U.S. at 108, 108 S.Ct. at 411–412. According to the Court, that was the end of the matter: no statute, no suit. *Omni* requires us to answer in the negative the question reserved in *Honeywell*. Unless a federal or state law authorizes personal jurisdiction over the defendant, the court must dismiss the suit.

▇▇▇ Logically, the next question is whether Wis.Stat. § 801.05(5)(c), adopted by Fed.R.Civ.P. 4(e), is such a law. It creates personal jurisdiction over parties that contract to ship goods into the state, which describes this case. *Wisconsin* could not use this law, in its own courts, to exercise jurisdiction over Seatriumph, because that firm lacks "contacts" with Wisconsin. The shortcoming of a state statute of this kind carries over into diversity litigation in federal court because under *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court acts as the state's agent in applying state law. The authority for the demands made on the defendant is state rather than national power. Federal courts accordingly absorb the "whole law" of the states, *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), including limitations on personal jurisdiction, except to the extent a national rule requires otherwise, *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). State-federal jurisdictional allocations would be thrown out of kilter if a federal court could give judgment in a diversity case that the state itself would have to dismiss. That rationale does not carry over to federal question cases. Whether Wisconsin may extract damages from a Liberian corporation with headquarters in Greece is irrelevant to the question whether the United States as a whole may do so.

May a state law, constitutionally insufficient to authorize jurisdiction in state court, supply the necessary basis of jurisdiction in federal court? The apparent oddity of a law being unconstitutional in the state forum and constitutional in the federal one need detain us only briefly. Courts often say that laws are constitutional in one application and unconstitutional in another. "Facial" unconstitutionality (to use the entrenched but maladroit metaphor) is the exception. No one doubts that § 801.05(5)(c) may be applied to some defendants consistent with the Constitution, while the due process clause blocks its application to others. So too § 801.05(5)(c) may be constitutional to the extent Fed.R. Civ.P. 4(e) absorbs its terms as the fulcrum of federal power, even though the state may not hale the party into its own courts.

Any obstacle to this result comes from Rule 4(e) itself, and not from either state law or the Constitution. The Rule specifies that service of process may be made "under the circumstances" prescribed by state law. Five courts of appeals believe that these words require lockstep treatment of personal jurisdiction in state courts under state law and federal courts under federal law, so that when assessing the constitutionality of an assertion of personal jurisdiction the federal court must pretend that it is a state court even when the issue arises under federal law. E.g., *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 950 (1st Cir.1984); *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 295–97 (3d Cir.1985); *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264–69 (5th Cir. 1983); *In re Damodar Bulk Carriers, Ltd.*, 903 F.2d 675, 679 n. 5 (9th Cir.1990); *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855–56 & n. 39 (11th Cir.1990). One has reached the contrary conclusion, *Handley v. Indiana & Michigan Electric Co.*, 732 F.2d 1265, 1268 (6th Cir.1984), as has Judge Newman, when he was on the district court, *Cryomedics, Inc. v. Spembly, Ltd.*, 397 F.Supp. 287 (D.Conn.1975), and Judge Gibbons, *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 292–93 (3d Cir.1981) (dissenting opinion). Commentators too are divided, although the academic majority favors the sixth circuit's reading. Compare, e.g., Marilyn J. Berger, *Acquiring* In Personam *Jurisdiction in Federal Question Cases: Procedural Frustration Un-*

der *Federal Rule of Civil Procedure 4,* 1982 Utah L.Rev. 285, 310–18; A.T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv.L.Rev. 1121, 1123–25 n. 6 (1966); Note, *National Contacts as a Basis for In Personam Jurisdiction over Aliens in Federal Question Suits,* 70 Calif.L.Rev. 686, 690–93 (1982); and Note, *Alien Corporations and Aggregate Contacts: A Genuinely Federal Jurisdictional Standard,* 95 Harv.L.Rev. 470 (1981); with Charles Alan Wright & Arthur R. Miller, 4 *Federal Practice & Procedure* § 1075 at 312–13 (1969 & Supp.1983).

Our sympathies lie with the minority view. "[U]nder the circumstances" is a slim thread on which to hang a conclusion that federal courts exercising national powers should pretend that they are state courts exercising state powers. The language was added to Rule 4(e) in 1963, and the Advisory Committee's notes do not discuss this subject. The language more naturally refers to the "circumstances" identified in the state statutes. Federal courts acquire personal jurisdiction only to the extent the state law authorizes service of process. When the state law authorizes this service (as Wisconsin's § 801.05(5)(c) does here), the federal court has jurisdiction unless the Constitution bars the door. Whether it does depends on all of the circumstances of the case—not only the defendant's activities, but also the fact that the court is exercising national power. It is more anomalous to dismiss on "constitutional" grounds a suit that is within the constitutional power of the national judiciary than it is to say that a long-arm statute is unconstitutional as applied in state court but valid as applied in federal court.

Sympathies are not enough to get United Rope another shot in the district court, however. We do not decide which of the two readings of Rule 4(e) to adopt, because United Rope did not present the contention for decision. Instead of relying on Rule 4(e), it asked us to create national common law. Its brief does not mention *Omni*—or for that matter our decisions in *Lisak* and *Fitzsimmons.* When asked at oral argu-

ment whether United Rope was relying on § 801.05(5)(c) and Rule 4(e) jointly as the basis of a national contacts approach, its counsel repeatedly reasserted that the argument was based on common law, and this despite repeated reminders that *Omni* closed that route decisively. Litigants in commercial cases choose their own arguments, and it is inappropriate for a court to decide a case on the basis of arguments not advanced and fully developed—and to which the adverse party necessarily has had no opportunity to respond. E.g., *United States v. Giovannetti,* 919 F.2d 1223, 1230 (7th Cir.1990). United Rope paid $5 million for the twine, and it demands substantially more than that from Seatriumph. It had both incentive and opportunity to develop and present whatever arguments it wanted the court to consider. It may be that something we do not now appreciate will demonstrate a flaw in the sixth circuit's approach. Accordingly we leave for another day, when we can decide based on complete arguments, the appropriate reading of Rule 4(e). The arguments United Rope did present are unavailing, and the judgment is

Affirmed.