**In re ACE PECAN COMPANY, INC., Debtor.**

**ACE PECAN COMPANY, INC., Plaintiff,**

**v.**

**GRANADEX INTERNATIONAL LTD., Defendant.**

**Bankruptcy Nos. 90 B 8080, 90 A 939.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 27, 1992.

John Campbell, Schwartz, Cooper, Kolb & Gaynor Chtd., Chicago, Ill., for Ace Pecan.

Mitchell A. Cohen, Brown, Shinitzky & Cohen Chtd., Chicago, Ill., for Granadex Intern.

## AMENDED MEMORANDUM OPINION

SUSAN PIERSON SONDERBY,
Bankruptcy Judge.

This matter comes before the Court on the motion of Granadex S.A., ("Granadex") to Dismiss the Adversary Complaint of Ace Pecan Company, Inc. ("Ace Pecan") for Lack of Personal Jurisdiction. Now, therefore, for the reasons set forth herein, the Motion to Dismiss is denied.

## BACKGROUND

Ace Pecan is the debtor in this Chapter 11 case. On November 20, 1990, Ace Pecan commenced this adversary proceeding to collect an unpaid invoice in the amount of $100,050 for goods sold to Granadex. Granadex did not answer the Complaint but instead filed a motion to dismiss for lack of personal jurisdiction.

Granadex is an alien corporation with its place of business in Geneva, Switzerland. In its motion to dismiss, Granadex alleges that the Complaint should be dismissed because Granadex does not conduct business in Illinois; does not have employees or agents in Illinois, and does not have an office in Illinois. These allegations were supported by an affidavit of Samy Hanein, Director of Granadex (the "Affidavit"). The Affidavit also indicated that Granadex did not have direct contact with Ace Pecan in negotiating the purchase of nuts. Granadex was told by American Commodity Corporation, a Delaware Corporation with its principal office located in New Jersey ("American"), that a large quantity of nuts were for sale. American had received this information from the Richard Franco Agency, a nut broker with its principal office also in New Jersey, who in turn had received this information from another nut broker, Jennings & Warner. Granadex had American contact the Richard Franco Agency and accept the offer. All of these contacts took place in New Jersey.

Based upon these facts Granadex argues that the "minimum contacts" with the State of Illinois required to support personal jurisdiction over a foreign defendant are not met, and the Complaint must be dismissed. Ace Pecan generally denies this allegation and contends that the Complaint supports a finding of personal jurisdiction.[1]

## DISCUSSION

Both parties have limited their arguments to whether Granadex had sufficient minimum contacts with the State of Illinois

---

1. Ace Pecan filed an Amended Response and attached an affidavit setting forth Granadex's alleged contacts with the State of Illinois. In a Memorandum Opinion dated March 13, 1992, this Court struck the affidavit due to unsupported conclusions of an agency relationship and the affiant's lack of personal knowledge.

to invoke the state's long-arm statute, Ill. Rev.Stat. ch. 110, § 2–209 (1991). This is not, however, the only analysis to be applied where a bankruptcy court is exercising personal jurisdiction over an alien corporation. There is also an issue whether the minimum contacts requirement applies to the exercise of personal jurisdiction by a bankruptcy court and whether the defendant's contacts with the state in which the federal court sits or the contacts with the United States should be considered. Although not raised by the parties this Court will also address those issues.

■ A majority of courts have held that the minimum contacts requirement upon which personal jurisdiction is generally founded does not apply in federal question bankruptcy proceedings. *Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233, 1244 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991); *In re Outlet Department Stores, Inc.*, 82 B.R. 694 (Bankr.S.D.N.Y.1988); *In the Matter of GEX Kentucky, Inc.*, 85 B.R. 431, 434 (Bankr.N.D.Ohio 1987). This determination was based upon the existence of a statute (or rule of court) authorizing nationwide service of process. In each of these cases the courts relied on Federal Rule of Bankruptcy Procedure 7004(d) which authorized "service anywhere within the United States."

Similarly, when other federal statutes authorize nationwide service of process, courts have consistently held that minimum contacts with the forum state are not required. *See Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir.1979) (nationwide service of process authorized by the Securities Act of 1934); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668 (7th Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988) (nationwide service of process authorized under RICO).

This case involves service of process in a foreign country. Because Fed.R.Bankr.P. 7004(d) is limited to service within the United States, the rule is not available. Instead Fed.R.Bankr.P. 7004(e) governs service in a foreign country. Rule 7004(e) provides:

(e) *Service on Debtor and Others in Foreign Country.* The summons and complaint and all other process except a subpoena may be served as provided in Rule 4(d)(1) and (d)(3) F.R.Civ.P. in a foreign country (A) on the debtor, any person required to perform the duties of a debtor, any general partner of a partnership debtor, or any attorney who is a party to a transaction subject to examination under Rule 2017; or (B) on any party to an adversary proceeding to determine or protect rights in property in the custody of the court; or (C) on any person whenever such service is authorized by a federal or state law referred to in Rule 4(c)(2)(C)(i) or (e) Fed.R.Civ.P.

Neither subsection (A) or (B) are applicable to this proceeding; it is a non-debtor being served in a foreign country and there is no property in the Court's custody which requires a determination of rights. *See In re All American of Ashburn, Inc.*, 78 B.R. 355, 357 (Bankr.N.D.Ga.1987) (subsection (B) relates to *in rem* proceedings). Subsection (C), the remaining provision available for service in a foreign country, directs the court to look to Federal Rule of Civil Procedure 4.

Rule 4 (Fed.R.Civ.P.) provides in relevant part:

(c)(2)(C) A summons and complaint may be served upon a defendant of any class referred to in paragraph (1) or (3) of subdivision (d) of this rule—

(i) pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that State ...

(e) **Summons: Service Upon Party Not Inhabitant of or Found Within State.** Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if

there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to such a party to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of the party's property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.

Rule 4(e) requires the federal court to look "either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amenable to service...." *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105, 108 S.Ct. 404, 410, 98 L.Ed.2d 415 (1987).

No federal statute authorizes service on foreign defendants in bankruptcy adversary proceedings, therefore, a bankruptcy court is required to apply state long arm statutes to obtain personal jurisdiction. *In re R.M.R. Corp.*, 133 B.R. 759 (Bankr. D.Md.1991) (relying on *Omni*); *All American, supra.*

The courts in both *R.M.R.* and *All American* agreed that Fed.R.Bkrtcy.P. 7004(e) required them to apply the state long-arm statute. Only two other cases have addressed a bankruptcy court's personal jurisdiction over defendants in foreign countries. In *In re Highway Equipment Company*, 120 B.R. 910 (Bankr.S.D.Ohio 1990) the court held that it was not necessary to show minimum contacts with the forum state. *Highway Equipment* is distinguishable, however, because the defendants, although residents of foreign countries, were served within the United States. Therefore it was unnecessary for the court to apply Fed.R.Bankr.P. 7004(e).

*In re Chase & Sanborn Corp.*, 835 F.2d 1341 (11th Cir.1988), *reversed on other grounds sub nom., Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), held that the bankruptcy court was not required to apply the state long arm statute to acquire personal jurisdiction over defendants in foreign countries. The Court determined that under Fed.R.Civ.P. 4(e), where a federal statute provides for service of process the federal court should apply that statute. The Court then concluded that Fed.R.Bankr.P. 7004(d) was the applicable statute governing jurisdiction.[2]

It is unclear why the court in *Chase & Sanborn* applied Fed.R.Bankr.P. 7004(d) when that rule is expressly limited to service within the United States and Rule 7004(e) specifically governs service outside this country. Because *Chase & Sanborn* was based upon an erroneous premise, this Court declines to follow it. Instead this Court concludes that pursuant to Fed. R.Bankr.P. 7004(e)(C) and Fed.R.Civ.P. 4(e) personal jurisdiction over foreign defendants is governed by applicable state long-arm statutes.

In this case the applicable statute is Illinois Revised Statute chapter 110, ¶ 2–209. Paragraph 2–209(a)(1) authorizes jurisdiction over any defendant, who in person or through an agent, transacts business within the state. In addition, subsection (c) was added in 1989 to make the long-arm statute co-extensive with due process requirements. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310, n. 5 (7th Cir.1990). Subsection (c) provides:

> A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States. [Ill. Rev.Stat. ch. 110, ¶ 2–209.]

▮ Accordingly, this Court will use ¶ 2–209 as the statutory basis for exercising jurisdiction over Granadex. This brings us to the second issue raised at the beginning of this discussion, whether the defendants "minimum contacts", required to satisfy due process should be measured with the

---

2. The court did recognize that the exercise of its jurisdiction was limited by the due process clause of the Fifth Amendment and applied a minimum contacts analysis.

state in which the federal court sits or with the United States as a whole.

The traditional test for determining the constitutionality of the exercise of personal jurisdiction considers the defendant's contacts with the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However, a minority of states and several commentators have concluded that when a federal court is exercising jurisdiction over an alien defendant on a federal law claim, the contacts should be measured with the United States as a whole. *Max Daetwyler Corp. v. Meyer,* 762 F.2d 290 (3d Cir.1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985); *Handley v. Indiana & Michigan Elec. Co.,* 732 F.2d 1265 (6th Cir.1984); Note, *Alien Corporations and Aggregate Contacts: A Genuinely Federal Jurisdictional Standard,* 95 Harv. L.Rev. 470 (1981); Lilly, *Jurisdiction over Domestic and Alien Defendants,* 69 Va. L.Rev. 85 (1982).[3] The aggregate contacts test retains the *International Shoe* analysis, but considers all of the defendant's contacts with the United States rather than just the limited contacts with the state in which the federal court sits.[4]

Courts and commentators have set forth several persuasive reasons for using an aggregate contacts test. When a federal court exercises jurisdiction under federal law, there are no concerns of encroaching upon the sovereignty of another state. *Max Daetwyler* 762 F.2d at 294. Similarly, there are no state policies or interests at stake when a federal court applies federal law. *United Rope Distributors Inc. v. Seatriumph Marine Corp.,* 930 F.2d 532, 534 (7th Cir.1991). Finally there is the recognition that alien corporations may be able to violate laws of this country without redress, because the alien may never have enough contacts with any one forum to exercise jurisdiction over it. *Chrysler*

*Corp. v. Fedders Corp.,* 643 F.2d 1229, 1239 (6th Cir.1981), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981).

While it appears that this answers the question whether an aggregate contacts test can be applied to determine the constitutionality of the exercise of personal jurisdiction over Granadex, in the law of personal jurisdiction answers are seldom that simple. The aggregate contacts test has generally only been used where the federal law also supplies the statutory basis for the exercise of personal jurisdiction through a nationwide or worldwide service of process provision. Where such a provision is not available, and the federal court is referred to the relevant state long-arm statute by Fed.R.Civ.P. 4(e), there is a secondary issue whether the aggregate contacts analysis can be utilized with the state long arm statute. The Seventh Circuit raised that precise issue in *United Rope,* but the discussion and answer are dicta.

In *United Rope* a Minnesota corporation sued a Liberian corporation in a federal district court in Wisconsin. The action was based upon federal admiralty law and the Carriage of Goods by Sea Act, 46 U.S.C.App. § 1300 *et seq.* Because the federal statute did not authorize service of process, the court applied the Wisconsin long-arm statute pursuant to Fed.R.Civ.P. 4(e). Under the Wisconsin long-arm statute the court concluded that the defendant did not have sufficient minimum contacts with the state of Wisconsin to satisfy due process.

In dicta the court discussed whether the defendant's aggregate contacts could be considered when applying a state long arm statute. It asked whether it would be a contradiction to allow a federal court in a federal question case, to exercise personal jurisdiction over an alien under a state long-arm statute, when the state court

---

**3.** The Supreme Court has twice declined to consider the availability of an aggregate contacts test. *Omni,* 484 U.S. at 102, n. 5, 108 S.Ct. at 409 n. 5; *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

**4.** Courts have consistently held that constitutionality of exercise of personal jurisdiction under federal law implicates the due process clause of the Fifth Amendment, not the Fourteenth Amendment. *Handley* at 732, F.2d 1271; *Diamond Mortgage Corp.,* 913 F.2d at 1244; *Chase & Sanborn,* 835 F.2d at 1344.

could not do so. It concluded, in dicta, that it would not.

The court recognized that federal courts, sitting in diversity, "absorb the 'whole law' of the state" but that that rationale did not apply in a federal question case. *United Rope*, 930 F.2d at 535. It then reviewed the authority on this issue and noted that the majority view required the federal court in federal question cases, to assess constitutionality of jurisdiction under the long-arm statute in precisely the same manner as the state court would do. Despite this majority view, the Seventh Circuit concluded that "[o]ur sympathies lie with the minority view." *United Rope*, 930 F.2d at 536. The Seventh Circuit reasoned that Fed.R.Civ.P. 4(e) must be read jointly with the state long arm statute, and that the language "under the circumstances" contained in the rule requires the federal court to consider "all of the circumstances of the case—not only the defendant's activities, but also the fact that the court is exercising national power." *United ed Rope*, 930 F.2d at 536. This discussion suggests that if the issue were properly before the Seventh Circuit that it would consider the defendant's aggregate contacts with the United States if a federal court were exercising jurisdiction.

While this discussion was dicta, because there is no other binding authority on this issue, this Court will follow the clear suggestions offered in *United Rope*. Furthermore one of the minority decisions cited in *United Rope, Cryomedics, Inc. v. Spembly, Ltd.*, 397 F.Supp. 287, 291 (D.Conn. 1975), observed that "measuring national contacts [is] particularly appropriate where national uniformity in enforcing that right should be the true guideline." The Bankruptcy Code requires uniformity in its enforcement and it is particularly important to allow bankruptcy courts broad authority to exercise personal jurisdiction over individuals needed to fully administer a bankruptcy estate. Congress evinced an intention to allow bankruptcy courts to exercise jurisdiction to their fullest extent by authorizing nationwide service of process in the Bankruptcy Rules. While that provision is inapplicable to reach an alien defendant, the intention behind that provision should not be ignored when developing rules governing a bankruptcy court's exercise of personal jurisdiction over aliens. Accordingly this Court will assess the constitutionality of the exercise of personal jurisdiction over Granadex by considering its aggregate contacts with the United States.

■ In applying the aggregate contacts analysis, the key considerations are fairness and reasonableness of requiring the alien defendant to appear in the United States. *Max Daetwyler*, 762 F.2d at 294. Where Granadex's contacts with the United States are measured there is no question that those contacts were sufficient to allow a court of the United States to exercise jurisdiction over it and that the exercise of jurisdiction is fair and reasonable. Granadex had significant contacts with a nut broker in the United States for the purpose of arranging the purchase of nuts. The transaction to purchase nuts from Ace Pecan was negotiated and consummated in the United States. The present litigation arises from those contacts with the United States. Furthermore, by entering into a contract to purchase goods from a domestic corporation Granadex should have reasonably foreseen that it could be brought into a court in this country for a breach of that contract. Accordingly this Court finds that Granadex' aggregate contacts with the United States are sufficient to satisfy the due process clause of the Fifth Amendment and to allow this Court to exercise personal jurisdiction over Granadex. Therefore Grandex' motion to dismiss for lack of personal jurisdiction must be denied.