**In re SCHWINN BICYCLE COMPANY, et al., Debtors.**

**SCHWINN PLAN COMMITTEE, Plaintiff,**

v.

**AFS CYCLE & COMPANY, LIMITED, et al., Defendants.**

**Bankruptcy Nos. 92 B 22474 to 92 B 22484. Adv. No. 94 A 01618.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 13, 1995.

Howard Feller, Dion W. Hayes, McGuire Woods Battle & Boothe, Richmond, VA, and Mark K. Thomas, Terry R. Horwitz Kass, Katten Muchin & Zavis, Chicago, IL, for Plaintiff Schwinn Plan Committee.

Liang Houh Sheih, Taipei Taiwan, ROC, and Eric G. Grossman, Bailey Borlack Nadelhoffer & Carroll, Chicago, IL, for Defendants Fairly Bike and Ming–Tay.

### MEMORANDUM OPINION INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW ON FAIRLY BIKE AND MING–TAY'S MOTIONS TO DISMISS

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to bankruptcy cases filed by Schwinn Bicycle Co. and various related entities (collectively "Debtor" or "Schwinn") under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Schwinn's liquidating Plan was confirmed. On October 3, 1994, as permitted by the confirmed Plan, Plaintiff Schwinn Plan Committee ("Plaintiff" or "Committee") filed the instant Adversary Complaint against a number of defendants, including Defendants Fairly Bike Mfg. Co. ("Fairly Bike") and Ming–Tay Hardware Industrial Co., Ltd. ("Ming–Tay") (collectively, the "Defendants"), both Taiwanese corporations and former Schwinn trade suppliers.

The Committee filed the instant Adversary Complaint against 49 prepetition creditors, including Fairly and Ming–Tay. In its Complaint, the Committee seeks to avoid and recover, pursuant to §§ 547 and 550 of the Bankruptcy Code, alleged preferential transfers totaling $111,142.95 from Fairly Bike and $125,245.92 from Ming–Tay.

On November 6, 1994, Fairly Bike and Ming–Tay filed substantially identical Motions to Dismiss under Fed.R.Bankr.P. 9012 (Fed.R.Civ.P. 12(b)), for lack of jurisdiction

over subject matter, lack of jurisdiction over these defendants, improper venue, and insufficiency of service of process, (collectively, the "Motions").

Fairly Bike attached to its Motion an affidavit sworn to by Mr. T.F. Liaw, its Senior Vice President. Similarly, Ming–Tay attached to its Motion an affidavit sworn to by Mr. W.T. Kuo, its Chairman. The Motions were originally signed by those corporate officers. Subsequently, however, the Defendants obtained counsel (the same attorneys for both defendants) who appeared herein and entirely adopted the earlier pleadings. Each defendant employed two attorneys, one in Taiwan and one in Chicago. This Court held four evidentiary hearings regarding Defendants' Motions.[1] Based thereon, the Court now makes and enters the following Findings of Fact and Conclusions of Law. For reasons stated herein, the motions of Fairly Bike and Ming–Tay to dismiss are by separate order entirely denied.

### FINDINGS OF FACT

Schwinn Bicycle Co. was an Illinois-based corporation engaged in the business of manufacturing bicycles and bicycle components. Prior to its bankruptcy, Schwinn purchased bicycle frames from Fairly Bike and bicycle locks from Ming–Tay, both of which are corporations based in and organized under the laws of Taiwan. Fairly Bike and Ming–Tay do not maintain offices in the United States.

On October 7, 1992, Schwinn and several related entities filed petitions for relief under Chapter 11 of the Bankruptcy Code. An order was entered on June 6, 1994, confirming Schwinn's Plan of Reorganization. The Schwinn Plan Committee was established pursuant to article IX of the Plan to perform various tasks necessary to implement the plan. Pursuant to § 9.2 of the confirmed Plan and ¶ 34 of the Confirmation Order, the Committee was authorized to prosecute any proceedings which could be brought on behalf of the Debtor's estate and to recover any transfers to which the Debtor might be entitled under the Bankruptcy Code.

Schwinn paid $111,142.95 to Fairly Bike within the 90 days prior to Schwinn's filing bankruptcy in order to satisfy invoices for bicycle frames that Fairly Bike manufactured and shipped to Schwinn in 1992. Schwinn also paid Ming–Tay $125,245.92 within 90 days prior to the bankruptcy filing for bicycle locks that Ming–Tay manufactured and shipped to Schwinn in 1992.

The Committee proved by documents 14 different shipments of bicycle locks by Ming–Tay to the Debtor at various destinations in the United States from November 1990 through July 1992, resulting in invoices totaling about $190,000.00. Plaintiff's Exs. 1–12. Also, Mr. Gary E. Thorholm, Schwinn's Assistant Treasurer during the time that the payments in issue were made, testified on behalf of the Committee. Mr. Thorholm established that Ming–Tay shipped about $500,000.00 worth of goods to the debtor in 1992 and normally shipped about $600,000.00 worth of goods annually.

The Committee also proved by documents 11 shipments of bicycle frames by Fairly to Schwinn at various destinations in the United States from June 1990 through September 1992, resulting in invoices aggregating over $500,000.00. Plaintiff's Exs. 13–24. Based on his experience as a bicycle store owner and long time Schwinn franchisee, Mr. Thorholm also testified that both Defendants continue to sell their products in the United States at the present time, and it is so found. He also testified that Ming–Tay advertises its products in United States publications, but no such advertisement was offered in evidence, and the testimony as to advertisements is not credited because it was hearsay and lacking in weight.

In an effort to establish certain jurisdictional facts relating to the Motions, the Committee served Defendants' Chicago counsel a Request for Admissions pursuant to Fed. R.Civ.P. 36 as adopted by Fed.R.Bankr.P. 7036. That was served on June 17, 1995. On July 26, 1995, Defendants filed Motions to Strike that Request, contending that the

---

**1.** Evidentiary hearings in this matter were held on June 1, July 7, and September 5 and 7 of 1995.

Committee was not entitled to serve discovery relating to the Motion to Dismiss on Defendants' Chicago attorney and, in any event, service for discovery should be made only according to Taiwanese law. However, Defendants did not request an extension of time to respond to the Request beyond the 30 days provided in Fed.R.Civ.P. 36(a), and did not obtain Plaintiff's agreement to any such extension. On August 9, 1995, the Committee filed a Response to Defendants' Motions to Strike, asserting that Fed.R.Bankr.P. 7005, which adopts Fed.R.Civ.P. 5(b), and Local Rule 603(C) which implements the national bankruptcy rules, collectively provide for the service of discovery pleadings on a party's local counsel. At trial, the Request for Admissions, through deemed admissions under Rule 36, was offered into evidence. The Committee thereby sought to show that the two Defendants were served both by registered mail and by letter rogatory. By separate order entered Sept. 18, 1995, and for reasons stated by the Court at the hearing on this issue, the Motion to Strike the Request to Admit was denied and all facts stated in that Request were deemed admitted because specific denials had not been timely filed.[2] As regards the issues of proper service, subject matter, and *in personam* jurisdiction, despite ample opportunity to offer evidence,[3] the Defendants did not identify before trial and did not offer at trial any evidence whatsoever, and they rested.

Through admission of the Requests to Admit into evidence and the Order deeming facts admitted (except as to portions for which Defendants were allowed to file a late denial), the Committee established a number of facts. Pl.Exs. 32, 33.

As discussed below, the Committee sought to serve each defendant in three ways: by personal service in Taiwan, by letter rogatory, and by mail. Each form of service described below delivered to each defendant copies of the Summons and Complaint herein translated into Mandarin Chinese.

### Personal Service in Taiwan

On February 20, 1995, Fairly Bike received Chinese translations of the Summons and Complaint. Request to Admit ¶¶ 1-4. On that date, a representative of the Taiwan Panchiao District Court personally delivered and presented Chinese language translations of the Summons and Complaint to an unidentified employee at Fairly Bike's corporate office. Since that employee refused to accept the Summons and Complaint, the Court representative left the documents at Fairly Bike's corporate office. Req. to Admit ¶¶ 4-5. Defendant Fairly Bike denied that any officer or managing or general agent of Fairly Bike was served with or received service of the original or a copy of the Chinese language translations (Amended Answer to Req. to Admit ¶ 7), but did not deny the service at its offices of the translated Summons and Complaint.

On February 21, 1995, a representative of the Taiwan Tainan District Court personally delivered and presented Chinese language translations of the Summons and Complaint in this Adversary proceeding to Ming–Tay, at its corporate office. Req. to Admit ¶¶ 1-4. Defendant Ming–Tay denies that any officer or managing agent of Ming–Tay was served with or received service of the original or a copy of the Chinese language translations (Amended Answer to Req. to Admit ¶ 5), but did not deny the service at its offices of the translated Summons and Complaint.

### Service by Letters Rogatory

The Committee also effected service of process by letter rogatory. In this regard, it offered the deposition of Ann Mickow, a paralegal with APS International, Ltd. ("APS"), a Minnesota corporation that specializes in service of judicial documents abroad and which the Committee employed to help serve Defendants by letter rogatory. Plaintiff's Ex. 37. That deposition was admitted. The Committee also introduced into

---

**2.** However, Fairly Bike was later allowed to amend paragraph 7 of its Answer to Request to Admit and Ming–Tay was allowed to amend paragraph 5 of its Answer.

**3.** The Defendants were given ample opportunity between June 1, when the first evidentiary hearing in this matter was held, and September 7, the date of the last evidentiary hearing, to offer evidence to support their defense.

evidence certain State Department Guidelines setting forth recommended procedures followed here on how Taiwanese individuals and corporations may be served with process, Plaintiff's Ex. 25, (deemed by this Court to be merely advisory). APS translated the Summons and Complaint and a letter rogatory into Mandarin Chinese and transmitted these documents for delivery to court officials in Taiwan. The letters rogatory with translated Summonses and Complaints reached the respective Taiwanese courts in each Defendant's judicial district, and those Taiwanese courts each in turn had a court agent serve each Defendant with those documents. Each Taiwanese court then provided a certificate of service. These certificates report that the translated Summons and Complaint were left with the Defendants.

### Service by Registered Mail

To show that it has also effected service by registered mail, the Committee has submitted copies of the international air mail return receipts received from the Postal Service. Plaintiff's Exs. 27–28. Each return receipt is stamped with a stamp bearing Chinese alphabet characters. The stamp which is imprinted on the international registered mail receipt, submitted by the Committee, belongs to Fairly Bike, which regularly affixes it to documents or mail. Requests to Admit ¶¶ 8–11. It is also found that the stamp imprinted on the international mail receipt submitted by the Committee is the same stamp that Ming–Tay affixes to documents and mail it received. Req. to Admit ¶¶ 6–9. Those return receipts demonstrated mail delivery of the Summons and Complaint to each Defendant. However, it was not established that the Clerk of the Bankruptcy Court performed the mailings or certified thereto.

Additional factual statements contained in the Conclusions of Law will stand as additional Findings of Fact.

### CONCLUSIONS OF LAW

#### A. Burden of Proof

■ Federal Rule of Civil Procedure 12(d) allows a party to assert certain defenses prior to trial on merits. One of these defenses is lack of personal jurisdiction. The rule contemplates hearing and determination of jurisdictional issues in advance of trial. 2A Moore, *Federal Practice* ¶ 12.16 at 2352–54 (2d ed. 1968). Since there is no statutory direction for procedure where personal jurisdiction is in issue, the mode by which procedure is determined is left to the trial court. *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir.1971), *citing Gibbs v. Buck,* 307 U.S. 66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939). When considering a challenge to its jurisdiction, a court may receive and weigh affidavits. 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure,* § 1351 at 248 n. 27 (1990). Discovery may be employed to establish jurisdictional facts. *Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 708–09, 102 S.Ct. 2099, 2107–08, 72 L.Ed.2d 492 (1982). During this preliminary proceeding, if done early in the case, although the burden of proof rests on the party asserting jurisdiction, the court's decision may be based on submission of such written materials. When that procedure is followed, the movant's burden of proof is met by a prima facie showing that personal jurisdiction is conferred under the relevant jurisdictional scheme. *Nelson by Carson v. Park Industries, Inc.,* 717 F.2d 1120, 1122 (7th Cir.1983); *Neiman v. Rudolf Wolff & Co., Ltd.,* 619 F.2d 1189, 1190 (7th Cir.1980).

■ However, if a motion to dismiss for lack of personal jurisdiction is determined after parties have taken discovery or after the court has conducted an evidentiary hearing on such a motion (such as that conducted here), a plaintiff must establish jurisdiction by a preponderance of evidence. *Levant Line, S.A. v. Marine Enterprises Corporation (In re Levant Line, S.A.),* 166 B.R. 221, 224 (Bankr.S.D.N.Y.1994). In this case, several evidentiary hearings were conducted regarding the Defendants' Motions, and both sides had ample opportunity to take discovery. Accordingly, the Committee here was obliged to show by a preponderance of evidence that this Court has subject matter and personal jurisdiction over Defendants and that venue is proper in this district.

## B. Subject Matter Jurisdiction

■ Defendants first contest subject matter jurisdiction. However, subject matter jurisdiction in this case lies under 28 U.S.C. § 1334(b). *See Schwinn Plan Committee v. TI Reynolds 531 Limited (In re Schwinn Bicycle Co., et al.)*, 182 B.R. 526 (Bankr. N.D.Ill.1995) and authorities cited. Federal district courts possess "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to a case under title 11." *See,* 28 U.S.C. § 1334(b). Each district court may refer to the bankruptcy judges for that district all cases and proceedings arising under title 11, and the district judges of this District have done so. *See* 28 U.S.C. § 157(a); N.D.Ill. General Rule 2.33(A). Furthermore, proceedings to avoid and recover preferences constitute "core proceedings" which bankruptcy judges may hear and determine. 28 U.S.C. § 157(b) and (b)(2)(F). Therefore, there is subject matter jurisdiction over this preference action.

## C. Venue

■ Venue properly lies in this Court. According to 28 U.S.C. § 1409(a), the district court in which a bankruptcy case is pending constitutes the appropriate venue for an adversary proceeding arising in that case.[4] Since the underlying bankruptcy case was filed and the Plan therein was confirmed in this District, venue lies here for this adversary proceeding.

■ However, Defendants argue that venue in this Court is improper because of their inconvenience of having to defend so far from their home offices in Taiwan. In this regard, Defendants confuse the legal concepts of improper venue and *forum non conveniens*. As already stated, venue is proper in this District. However, a case may be removed to another district if doing so is in the interest of justice and for the convenience of the parties. Rule 7087 of the Fed. R.Bankr.P. provides, in pertinent part, that a bankruptcy court "may transfer an adversary proceeding ... to another district pursuant to 28 U.S.C. § 1412...." Fed.R.Bankr.P. 7087. Section 1412 provides that "[a] district court may transfer a case or proceeding under Title 11, 28 U.S.C. § 101 *et seq.,* to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. However, neither Fed.R.Bankr.P. 7087 nor 28 U.S.C. § 1412 provide for transfer of an adversary proceeding to the courts of another country. There is no authority for such a transfer. A transfer order would be tantamount to dismissal of the case. While foreign defendants have often had to defend various bankruptcy-related actions in United States bankruptcy courts,[5] no bankruptcy court has ever removed a core proceeding to another country as Defendants suggest is proper. As a result, the Defendants' request for transfer of this case to the courts of Taiwan under the *forum non conveniens* doctrine is not authorized under law.

## D. Personal Jurisdiction

The main issue to be addressed here is whether personal jurisdiction has been obtained against these Defendants so as to enable entry of a decision on merits of the dispute between these parties.

■ Personal jurisdiction may be established either by proper service of process, *see Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987), or by the defendant's

---

4. 28 U.S.C. § 1409(a) states:
 **§ 1409. Venue of proceedings arising under title 11 or arising in or related to cases under title 11.**
 (a) Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such a case is pending.

5. *See, e.g., Deak & Co., Inc. v. Ir. R.M.P. Soedjono (In re Deak & Co.),* 63 B.R. 422 (Bankr.S.D.N.Y.

1986) (preference action); *Banco Latino International v. Amazonas International Bank, Ltd. (In re Banco Latino International),* 176 B.R. 278 (Bankr.S.D.Fla.1994) (adversary proceeding initiated by debtor bank to recover unpaid placement which matured post-petition); *R.M.R. Corporation v. Clare Brothers, Ltd., (In re R.M.R. Corporation),* 133 B.R. 759 (Bankr.D.Mary.1991) (adversary action instituted by debtor to recover account receivable).

waiver of any defect in service, *see Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939). Service over a nonresident defendant is legally valid, so long as a federal or state statute establishing amenability to service is complied with and the exercise of jurisdiction further accords with due process protections afforded by the Fifth and Fourteenth Amendments. *See Omni Capital Int'l,* 484 U.S. at 104, 108 S.Ct. at 409 (federal courts look to Fifth Amendment due process standards when a federal statute governs service of process).

Defendants filed timely objections to service of process. *See* Fed.R.Civ.P. 12(g), (h) (applicable through Fed.R.Bankr.P. 7012(b)). Defendants claim the Committee has not properly served them under United States law and, alternatively contend that Plaintiff should have complied with requirements of Taiwanese law as to service of process.

Two issues are thus raised: First, whether Plaintiffs served by proper procedures, and, second, whether exercise of *in personam* jurisdiction on these foreign Defendants meets Constitutional standards.

### 1. *Procedures for Service of Process*

■ Defendants first argue that Taiwanese law applies to the question of proper service because they are each Taiwanese corporations. Defendants also assert that Taiwanese law applies because this Court should follow an asserted doctrine of international comity. Further, they claim that the Committee should have effected service according to the *Hague Service Convention of 1965,* 20 U.S.T. 361.

6. Fed.R.Bankr.P. 7004(a):

 **(a) SUMMONS; SERVICE; PROOF OF SERVICE.** Fed.R.Civ.P. 4(a), (b), (c)(2)(C)(i), (d), (e) and (g)–(j) applies in adversary proceedings. Personal service pursuant to Fed. R.Civ.P. 4(d) may be made by any person not less than 18 years of age who is not a party and the summons may be delivered by the clerk to any such person.

7. Fed.R.Bankr.P. 7004(g):

 **(g) EFFECT OF AMENDMENT TO FED. R.CIV.P. 4.** The subdivisions of Fed.R.Civ.P. 4 made applicable by these rules shall be the subdivisions of Fed.R.Civ.P. 4 in effect on Jan-

For reasons discussed below, Defendants cannot rely on the Hague Convention and no other treaty or statute governs service on a Taiwanese party defendant. Former Fed. R.Bankr.P. 7004(a) provided, while the hearings were being held, the ways under federal law that a defendant could be served in an adversary proceeding. That Rule 7004(a) adopted Fed.R.Civ.P. 4(a), (b), (c)(2)(C)(i), (d), (e) and (g)–(j).[6] Rule 7004 formerly mirrored Fed.R.Civ.P. 4. However, while Rule 4 was amended in 1993, Rule 7004 of the Federal Bankruptcy Rules was not amended at that time. Until amended effective December 1, 1993, after hearings on this matter had been concluded, Fed.R.Bankr.P. 7004 only incorporated former Fed.R.Civ.P. 4. Pre-amendment Fed.R.Bankr.P. 7004(g) directed this Court during the hearing to apply the then unamended Rule 4 which had come into effect on January 1, 1990.[7] Thus, it is under the pertinent portions of old Rule 4, and generally under Bankruptcy Rule 7004(a) that this Court first looked to decide whether the Committee properly served Fairly Bike and Ming–Tay. Amended Rule 7004 has come into effect since the hearing and prior to this ruling. Therefore, analysis as to whether that new Rule applies is also appropriate.

### *Analysis Under Former Fed.R.Civ.P. 4*

A reading of Fed.R.Bankr.P. 7004 and former Fed.R.Civ.P. 4 suggests three alternative ways thereunder in which a plaintiff may serve foreign corporations in bankruptcy adversary proceedings. First, Rule 7004(e) indicated that the summons and complaint may be served on a foreign defendant as provided by former Fed.R.Civ.P. 4(d)(1) and 4(d)(3).[8]

uary 1, 1990, *notwithstanding any amendment to Fed.R.Civ.P. 4 subsequent thereto.* (Emphasis added.)

8. Fed.R.Bankr.P. 7004(e) stated:

 **(e) SERVICE ON DEBTOR AND OTHERS IN FOREIGN COUNTRY.** The summons and complaint and all other process except a subpoena may be served as provided in Fed. R.Civ.P. 4(d)(1) and (d)(3) in a foreign country (A) on the debtor, any person required to perform the duties of a debtor, any general partner of a partnership debtor, or any attorney who is a party in a transaction subject to examination under Rule 2017; or (B) on any

Moreover, Fed.R.Civ.P. 4(d)(3) stated that the summons and complaint may be served personally upon an officer, a managing or general agent of the corporation.[9] However, Rule 7004(e) also allowed other methods of service. Rule 7004(e) provided that "[t]he summons and complaint and all other process except a subpoena **may** be served as provided by Rule 4(d)(1) and (d)(3)...." (emphasis supplied). The use of the word "may" implies that Rule 7004(e) is not the only method for service available to plaintiff. As a result, plaintiff could also use either Fed.R.Civ.P. 4(e) or 4(i).[10]

Service of process under Fed.R.Civ.P. 4(e) required that plaintiff serve process in compliance with any existing federal statute or state law.[11] As shown below, there is no federal law that provides for a method of service, and therefore only state law—in this case the law of Illinois—can be a guide to how process may be served under this alternative.

Courts have consistently held that no federal statute, including the Bankruptcy Code, provides guidance on how to serve foreign defendants. *Lone Star Industries, Inc. v. Compania Naviera Perez (In re Trap Rock)*, 155 B.R. 871, 887 (Bankr.S.D.N.Y.1993); *Ace Pecan Company, Inc. v. Granadex International Ltd. (In re Ace Pecan Co.)*, 143 B.R. 696, 697 (Bankr.N.D.Ill.1992) (Sonderby, J.); *Old Electric Incorporated v. RCP, Inc. (In re Old Electric Inc.)*, 142 B.R. 189, 191 (Bankr. N.D.Ohio 1992).

Moreover, there is no other source of federal law such as a treaty which gives any directions on how to serve these Taiwanese Defendants. The *Treaty of Friendship, Commerce and Navy*, (FCN),[12] signed between the United States and Taiwan in 1946, does not address the issue of service of process. Moreover, as discussed more fully hereinbelow, the *Hague Service Convention*, signed by the United States and many other countries, Nov. 15, 1965; 20 U.S.T. 361; TIAS 6638; 658 UNTS 163, does not provide a method of service applicable here since Taiwan is not signatory country.

party to an adversary proceeding to determine or protect rights in property in the custody of the court; or © on any person whenever such service is authorized by a federal or state law referred to in Fed.R.Civ.P. 4(c)(2)(C)(I) or (e).

9. Fed.R.Civ.P. 4(d)(3) stated:
**(d) Summons and Complaint: Person to be Served.** The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

10. As noted above, Fed.R.Bankr.P. 7004(a) expressly incorporated Rule 4(e) and (i) of Fed. R.Civ.P.

11. Rule 4(e) of the Fed.R.Civ.P. provided:
**(e) Summons: Service Upon a Party Not Inhabitant of or Found Within State.** Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is not provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the states in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state ..., service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.

12. Treaty of Friendship, Commerce and Navigation, Nov. 4, 1946, U.S.–Taiwan, 63 Stat. 1299 (1946). The continued vitality of the FCN is ensured by the Taiwan Relations Act ("TRA") codified at 22 U.S.C. § 3301, *et seq.* which mandated the:

continuation in force of all treaties and other international agreements ... entered into by the United States and the governing authorities on Taiwan recognized by the United States as the Republic of China prior to January 1, 1979 and in force between them on December 31, 1978, unless and until terminated in accordance with law.
22 U.S.C. § 3303(c).

Therefore, there is no applicable federal statute or treaty, and only federal court rules and Illinois law can offer guidance. Illinois Code of Civ.Proc. § 2–204 is the state statute that provides a method of service on private corporations and can therefore be used as a guide under Rule 4(e). 110 ILCS § 2–204. *See In re Ace Pecan,* 143 B.R. at 699 (finding that the Illinois Long–Arm Statute provides authorization for service of process under Rule 4(e)).

Finally, former Fed.R.Civ.P. 4(i) was another alternate method by which process could be served[13] as incorporated by Fed.R.Bankr.P. 7004(a).[14] Several opinions have approved of Rule 4(i) as a proper method of service in bankruptcy adversary proceedings. *See Official Committee of Unsecured Creditors of Southold Development Corp. v. Mittemyer,* 148 B.R. 726, 728 (E.D.N.Y.1992) (plaintiff could have properly effected service under Rule 4(i)(1)(D)); *Cf. Crysen/Montenay Energy Company v. E & C Trading Ltd. (In re Crysen/Montenay Energy),* 166 B.R. 546, 548 (S.D.N.Y.1994) (finding that while plaintiff properly tried to serve by letters rogatory under Rule 4(i)(B), it had not shown "good cause" for not serving defendants 120 days after filing the complaint). The Committee claims that it has served Defendants by complying with both Fed.R.Civ.P. 4(i)(1)(B) and 4(i)(1)(D). Rule 4(i)(1)(B) allows service in a foreign country by letter rogatory whereas Rule 4(i)(1)(D) allows service by registered mail dispatched by the Clerk of Court.

The Committee did not prove by a preponderance of the evidence that it made proper service by registered mail dispatched by the Clerk of Court. As proof that it effected service by registered mail, it submitted a translated Summons and Complaint into evidence. However, neither Summons was certified as having been served by the Clerk, and therefore neither constitutes proof that it was dispatched by the Clerk to Defendants as required by Rule 4(i)(1)(D). The Committee has also submitted copies of international air mail registered mail receipts which are addressed to Fairly Bike and Ming–Tay and which were receipt stamped by Defendants' employees. The registered mail receipts are stamped, instead of signed, by certain stamps appearing to have Chinese inscriptions. While a court may accept other evidence than a signed receipt,[15] in this case, all that the Committee has submitted are certain translated Summonses that were indeed served by mail, but did not establish that the Clerk of this Court thereby served Defendants. As a result, the Committee did not show that it caused Defendants to be properly served by registered mail under Rule 4(i)(1)(D).

The Committee did, however, prove by a preponderance of evidence (and indeed no contrary evidence was offered) that it did effect service by letters rogatory and by actual delivery to the offices of Defendants.

13. Fed.R.Civ.P. 4(i)(1) states in part:

**Alternative Provisions for Service in a Foreign Country.**

(1) *Manner.* When the federal or state law referred to in subdivision (e) of this rule authorizes service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made: (A) in the manner prescribed by the law of the foreign country for service in that country in an action in and of its courts of general jurisdiction, or (B) *as directed by the foreign authority in response to a letter rogatory, when service in either case is reasonably calculated to give actual notice; or* (C) upon an individual, by delivery to the individual personally, and upon a corporation or partnership or association, by delivery to an officer, a managing

or general agent; or *(D) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or* (E) as directed by order of the court. . . .

(Emphasis added.)

14. *See* Note 6, *supra.*

15. Rule 4(i)(2), read together with Rule (g), appears to give this Court discretion to consider other evidence than a receipt signed by the party to be served. Rule 4(i)(2) states:

When service is made pursuant to subparagraph (1)(D) of this subdivision, proof of service shall include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court.

The last sentence of Rule 4(g) states that "[f]ailure to make proof of service does not affect the validity of the service."

A letter rogatory is "a formal request from a court in which an action is pending, to a foreign court to perform some judicial act." 22 C.F.R. § 92.54. According to the United States State Department, letter rogatory service is advisable if enforcement of a judgment in Taiwan is anticipated. *See* Plaintiff's Ex. 13.

To assist it in effecting letter rogatory service on the Defendants, the Committee employed APS International, Ltd. ("APS"), a Minnesota corporation that specializes in service of judicial documents abroad. Ann Mickow, a paralegal with APS, testified by deposition about the Committee's and APS's efforts in effecting letter rogatory service on the Defendants. *See* Mickow Deposition Transcript (Plaintiff's Ex. 37). The Committee also introduced into evidence the translated Summonses and Complaints which were served on the Defendants by the letter rogatory method. *See* Plaintiff's Exs. 32 and 33. APS and the Committee effected service of letters rogatory on the Defendants in accordance with certain guidelines distributed by the United States State Department.[16] While those guidelines are not legally dispositive of the way parties in Taiwan are to be served by letter rogatory, they give views of the State Defendant as to proper procedures to follow, and no contrary evidence or persuasive authority was offered as to any different procedures that should be followed. Following those guidelines, APS sent a translated Summons and Complaint for each Defendant to the American Institute of Taiwan for ultimate transfer to Taiwanese courts, which were to and actually did send court agents to serve Defendants.[17] These efforts resulted in return to the Clerk of this Court of proofs of letter rogatory service on both Defendants, which were admitted into evidence. *See* Plaintiff's Exs. 34 and 35. Through this evidence, the Committee established by a preponderance of evidence that it

effected service on these two Defendants by letters rogatory, on Fairly February 20, 1995, and on Ming–Tay February 21, 1995.

### *Analysis Under New Fed.R.Civ.P. 4*

██ It is within this Court's discretion to apply amended Rule 4 to the present proceeding because new Fed.R.Bankr.P. 7004 became effective December 1, 1993, thus adopting new Fed.R.Civ.P. 4 into bankruptcy procedure. In accordance with 28 U.S.C. § 2074(a) and an April 27, 1995, order of the United States Supreme Court, this and other new amendments will govern not only all proceedings started on or after December 1, 1993, but also "insofar as possible" all proceedings then pending.

This Court therefore has limited discretion to apply the amended Rules of Civil Procedure retroactively to cases pending at the date when the amendments took affect. Under § 2074,

> The Supreme Court shall transmit to the Congress not later than May 1 of the year in which a rule prescribed under section 2072 is to become effective a copy of the proposed rule. Such rule shall take effect no earlier than December 1 of the year in which such rule is so transmitted unless otherwise provided by law. The Supreme Court may fix the extent such rule shall apply to proceedings then pending, except that the Supreme Court shall not require the application of such rule to further proceedings then pending to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies.

28 U.S.C. § 2074.

The commentary to § 2074 accompanying enactment of that provision stated:

---

**16.** The Guidelines suggest that letters rogatory should be translated into Mandarin Chinese and sent together with a certified check for $100.00 to the American Institute in Taiwan, which will in turn send it to the Taiwan Coordination Council for North American Affairs, which in turn will send the letters to local a Taiwanese Court located in the Defendants' district. The Committee followed that procedure.

**17.** The original proof of letter rogatory service on Fairly was returned to the Court, but was misplaced by deputies to the Clerk of Bankruptcy Court and only a copy is available. However, the copy was found to be a reliable substitute for the returned original.

The Supreme Court retains the power to determine the date on which new rules are to take effect, but with an important qualification in respect of retroactivity. The Court can include a general instruction on retroactivity, but the ultimate determination of whether a new rule is to be applied to proceedings pending when the rule takes effect is left to "the court in which such proceedings are pending." If in the opinion of the court "the application of such rule in such proceedings would not be feasible or would work injustice," the court can disregard the new rule and apply "the former rule" instead ... If and when the case works its way up to a court of appeals, the retroactivity determination is as subject as any other to modification or overturning if found to be an abuse of discretion.

Pursuant to this rule-making authority, the Supreme Court ordered the pertinent amendments of Rule 4 on April 27, 1995, to take effect on December 1, 1995, and to "govern all proceedings in civil actions thereafter commenced and, insofar as practicable, all proceedings in civil actions then pending." Order of the Supreme Court, April 27, 1995. A cause of action is "pending" in a court from the filing of a complaint to final judgment. *Hamm v. Frank,* 1993 WL 21186, *3 (7th Cir.1993).

On December 1 of this year, the issue of whether Fairly Bike and Ming–Tay were properly served was and still is pending before this Court. It is therefore within this Court's discretion, if practicable, to apply the amended Rule 4.

Applying old or new Rule 4 in this particular case yields the same result. Even though the means by which a plaintiff may serve a foreign defendant under old and new Rule 4 differ, in this case the Committee is trying to establish that it has served Defendants by personal service, by letters rogatory, and by registered mail. All of these methods were and are available under both the old and the new Rule 4. New Rule 4(f) states:

(f) Service Upon Individuals in a Foreign Country. Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in a place not within any judicial district of the United States:

(1) by any internationally agreed means reasonably concluded to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or

(2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

(A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or

(B) *as directed by the foreign authority in response to a letter rogatory or letter of request;* or

(C) unless prohibited by the law of the foreign country, by

(i) *delivery to the individual personally of a copy of the summons and the complaint;* or

(ii) *any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served;* or

(3) by any other means not prohibited by international agreement as may be directed by the court.

Fed.R.Civ.P. 4(f), 28 U.S.C.A. (Emphasis added.)

In this case, as earlier found and concluded, Schwinn effected service by letters rogatory, which is allowed by new Rule 4(f)(2)(B). Service by registered mail is allowed by Rule 4(f)(2)(C)(ii), unless prohibited by the law of the foreign country where defendants reside. In this case, Defendants did not adduce any evidence that the law of Taiwan prohibits service by any of the means permitted under Rule 4(f)(2)(C), but once again, there was no service by mail provided by our Clerk of Court, so 4(f)(2)(C)(ii) was not complied with. However, it was established that Defendants were actually served by delivery to their offices of translated copies of the Summons and Complaint, so there was compliance with

Rule 4(f)(C)(i). Thus, if new Rule 4 were to apply, Schwinn's letter rogatory or service by delivery would be effective.

The parties argued the issue of proper service within the confines of old Rule 4. They did so because, as noted above, Fed. R.Bankr.P. 7004(g) dictated that former Fed.R.Civ.P. 4 be applied at the time that hearings on this issue were being held. Moreover, efforts by the Committee to serve Defendants took place in the period from October 1994 through the early part of 1995, a period when old Rule 4 was effective. Under these circumstances, new Rule 4 is not the main basis for decision here, even though service in this case complied with it. However, since the Defendants have received thorough and repeated notices of these proceedings, discretion is exercised to apply new Rule 4 as an alternative basis for finding that service herein was proper as to both Defendants.

### *Inapplicability of the Hague Service Convention*

■ Defendants argue that one way to serve a defendant in Taiwan properly is by complying with the *Hague Service Convention.* 20 U.S.T. 361. They raise an issue that can be resolved only through reference to a long legal and political history affecting Taiwan the Republic of China ("ROC") and its relationship with the United States and the Peoples Republic of China ("PRC").

The Defendants reason that Taiwan is a part of the People's Republic of China, ("PRC"), and because the PRC is a signatory of the *Hague Service Convention,* service on a Taiwanese defendant must be made under the *Hague Service Convention.* However, the matter is not nearly so neatly dealt with.

Defendants claim to be part of a nation that does not govern its soil or determine its laws, but that claim is contradicted by political developments that led to enactment of the *Taiwan Relations Act,* 22 U.S.C. § 3301 *et. seq.* (the "Act"). On December 30, 1978, the United States formally recognized the PRC as the sole government of China and withdrew recognition from the Republic of China. *See President's Memorandum for All Departments and Agencies; Relations with the*

*People of Taiwan,* reprinted in 1979 U.S.Code Cong. & Admin.News 36, 75. One of the purposes of the subsequent *Taiwan Relations Act* was to set up mechanisms through which the United States could maintain relations with Taiwan short of full diplomatic recognition, which was precluded by recognition of the PRC as the sole legal government of China. *See* 22 U.S.C. § 3309; *see also,* Executive Order No. 12143 (June 22, 1979). The fact that Taiwan is separate from the PRC is implicit in the Act's provision that all treaties and international agreements entered into between the United States and Taiwan before the Act's enactment and in effect as of December 31, 1978, were to continue in force. *See* 22 U.S.C. § 3303(c) and n. 12 *supra.* Thus, the United States maintained its treaty obligations to Taiwan that were in existence prior to the Taiwan Relations Act, but did not apply to Taiwan those treaties between the PRC and the United States that had been or would be entered into with the PRC. One of those treaties not made applicable to Taiwan was the *Hague Service Convention.* A review of the *Hague Service Convention* indicates that, while the PRC was a signatory to the treaty, Taiwan was not. *See* 20 U.S.T. 361. Thus, the Taiwan Relations Act quite clearly continued viability of earlier treaties with Taiwan and just as clearly omitted application to Taiwan of other treaties between the United States and the PRC, thereby excluding the *Hague Service Convention.*

Defendants have asked this Court to adopt the holding of *Atlantic Mutual Inc., v. Northwest Airlines,* 796 F.Supp. 1188 (E.D.Wis.1992), wherein the district judge held that Taiwan was bound by the Warsaw Convention even though it did not sign that document, because the court held Taiwan to be part of the PRC.

The reasoning in *Atlantic Mutual* was flawed. Its main error lay in the conclusory statement that the United States' recognition of the People's Republic of China means that the United States recognizes its territorial claim to the island of Taiwan. The United States' recognition of mainland China and derecognition of Taiwan has not had the effect in any legal or practical sense of accepting the PRC's territorial claim to Taiwan.

*See Wong v. Ilchert,* 998 F.2d 661, 663 (9th Cir.1993) (China and the United States' "mutual commitment to respect one another's territorial integrity ... does not necessarily entail acceptance of one another's territorial claims"); *see also* Michael E. Mangelson, *Taiwan Re–Recognized: A Model for Taiwan's Future Global Status,* 1992 B.Y.U.L.Rev. 231, 234 ("the TRA [Taiwan Relations Act] and supplemental agreements have, to some extent, reestablished the United States' recognition of Taiwan as a sovereign nation-state"); *see also N.Y. Chinese TV Programs v. U.E. Enterprises,* 954 F.2d 847 (2d Cir.1992).

■ In one respect, the court in *Atlantic Mutual* was right in citing *United States v. Pink,* 315 U.S. 203, 229, 62 S.Ct. 552, 565, 86 L.Ed. 796 (1942), for the proposition that courts should not review the Executive Branch's decision whether or not to recognize a government, and that such a matter is a political decision to be made by the Executive Branch. In Pink, the court found that the question of what government is representative of a foreign state is one to be determined by the Executive Branch and is beyond the purview of judicial review. By analogy, it would be beyond a court's authority to decide, as Defendants urge, that Taiwan has tacitly been recognized by the United States as a party to any treaty signed by the PRC. Such questions of recognition are political decisions to be decided by the Executive Branch.

Taiwan is not a signatory to the *Hague Service Convention.* As a result, the *Hague Service Convention* does not apply to service of process on citizens of Taiwan. Accordingly, the Defendants' assertion that service of process in Taiwan from an American court must be made under the *Hague Service Convention* is incorrect, and the Committee has properly effected service on both Defendants by methods allowed under United States law.

### Inapplicability of Taiwanese Law Governing Service

■ In the alternative, Defendants claim that the Committee must comply with Taiwan law regarding service of process. Motion § C, p. 4. That contention is not supported by applicable authority. Proper service is addressed under United States law by the pertinent rules governing actions before this Court, as previously discussed. Nowhere in those rules is it required of any plaintiff in an action before a federal bankruptcy court to comply with the law of a defendant's country of residence, although that is one permitted method of service.[18]

### "International Comity" Doctrine Is Not Applicable

In their Motion to Dismiss and Motion to Reconsider, Defendants asserted that, under the doctrine of international comity, whenever an American court's "act reaches into a foreign country, the domestic laws of the forum country must be respected and complied with." Memorandum § B, p. 3. They argue that the doctrine of international comity ensures that a state court should respect and not question the act of an independent country. Motion § B, p. 3, *citing Banco Nacional de Cuba v. Sabbatino, et al.,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1963).

The doctrine of international comity does not apply in this case. *Banco* presented the Supreme Court with the question of whether, considering the break in diplomatic relations with Cuba and the embargo imposed by the United States, a bank which was an instrumentality of Cuban government had access to United States courts. Using the doctrine of comity, it was held that the bank, which was an instrumentality of the Cuban government, could sue another party in a United States court regardless of the break in diplomatic relations. In discussing the doctrine of comity, the Court recognized that uniformity of treatment as to nationals of the two countries may be an element of that doctrine. 376 U.S. at 411, 84 S.Ct. at 931. However, the opinion expressly limited its finding of reciprocity of treatment to enactment of foreign

---

**18.** Rule 4(i)(1)(A) allows service according to the law of the foreign country where the defendant is located. Rule 4(i)(1)(A) is only one of several ways in which service may be effected on a defendant in an adversary action before a bankruptcy court.

judgments. Defendants urge this Court to apply the limited principle of reciprocity regarding enforcement of foreign judgments to an issue as to service of process abroad. Defendants' argument fails on two grounds. First, *Banco* limited the principle of reciprocity only to enforcement of foreign judgments. We are not here asked to respect the act of any Taiwan court. Second, United States courts do not require compliance with United States law when United States citizens are sued in foreign courts unless some treaty so requires. Here, no such treaty applies, and therefore there is no reciprocity with Taiwan as to service of process. Thus, the doctrine of comity, and its essential ingredient of reciprocity, does not apply here. The doctrine of international comity in no way dictates the way in which these foreign Defendants should be served with process in an action pending in a United States court.

Thus, the Committee did not have to comply with Taiwan law regarding the proper way in which these Defendants should be served with notice of the present adversary proceeding.

### Conclusion As To Service of Process

For the foregoing reasons, the Committee has shown by a preponderance of the evidence that it has effected service properly. Moreover, service was reasonably calculated to give actual notice. Indeed, there is absolutely no doubt on this record that the Defendants have each received actual notice and service of translated documents several times, despite arguments as to fairness raised which in other circumstances might be meaningful. It is clear that Fairly Bike and Ming–Tay have two counsel actively working on their behalf, one of whom (in Taiwan) is literate in Mandarin Chinese as well as in English, and the other of whom is knowledgeable about bankruptcy law and American procedure. Moreover, Dr. Shieh, Defendants' Taiwanese counsel, is a graduate of Yale Law School, and admitted to the bar of at least one state of the United States, and is familiar with procedures in our federal courts. Fairly Bike and Ming–Tay have been served properly and, under the circumstances, there is no lack of reasonableness or fairness in making that finding and drawing that conclusion.

### 2. Defendants Had Necessary Aggregate Contacts With the United States to Meet Constitutional Standards

Absent consent to or waiver of personal jurisdiction in a case against a United States citizen, this Court would assure itself that the assertion of personal jurisdiction is consistent with due process under the Constitution. *TI Reynolds,* 182 B.R. at 528. A court may exercise *in personam* jurisdiction over a domestic defendant that has established minimum contacts with the forum. *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The court in *International Shoe* held that

> due process requires ... that in order to subject a defendant to judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

326 U.S. at 316, 66 S.Ct. at 158 (*citing Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). In *International Shoe,* the minimum contacts test was applied to a domestic corporation, not a foreign one such as those involved here. The issue there was whether the defendant's contacts were sufficient to satisfy the due process requirement of the Fourteenth Amendment. 326 U.S. at 311, 66 S.Ct. at 156. Nonetheless, the *International Shoe* standard has been applied to both foreign and domestic corporations. The difference in the application to foreign defendants is that the proper focus shifts from one of due process under the Fourteenth Amendment to Fifth Amendment standards. *See Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976) (aliens are afforded protection under the Fifth Amendment); *Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 981, 41 L.Ed. 140 (1896) (same).

Following the seminal holding in *International Shoe,* courts fashioned a two-pronged test. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85

L.Ed.2d 528 (1985). The first prong requires that to find jurisdiction a court must determine whether the defendant has had "minimum contacts" with the forum state. If the defendant has had such "minimum contacts," the second prong of the test requires that jurisdiction over the defendant be "fair and reasonable." *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 283 (7th Cir.1990); *Unis International Corporation v. M.L. Marketing,* 1993 WL 116744, *2 (N.D.Ill.1993).

Bankruptcy courts have also applied the two-pronged test of "minimum contacts" and "fair and reasonable" to protect foreign corporations and persons. *See In re A & W Publishers, Inc.,* 39 B.R. 666, 667 (Bankr. S.D.N.Y.1984) (finding that a minimum contacts test applies in bankruptcy to protect foreign corporations against being subject to jurisdiction in this country without due process of law); *Deak & Co., Inc. v. Ir. R.M.P. Soedjono (In re Deak & Co., Inc.),* 63 B.R. 422 (Bankr.S.D.N.Y.1986); and *Banco Latino International v. Amazonas International Bank, Ltd.,* 176 B.R. 278 (Bankr.S.D.Fla. 1994).

### *The Aggregate Contacts Test*

■ Cases examining *in personam* jurisdiction under a variety of factual settings have illustrated the minimum contacts requirement, relying on several factors applied in different ways depending on whether domestic or foreign defendants are involved.

In *Shaffer v. Heitner,* the Supreme Court emphasized that "the relationship among the defendant, the forum, and the litigation ... [is] the central concern" in personal jurisdiction inquiries. 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). *Hanson v. Denckla* stressed the defendant's contacts with the forum and stated that "[the application of the [minimum contacts] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (citations omitted). The "purposeful" availment requirement ensures

that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

The *International Shoe* requirement that "traditional notions of fair play and substantial justice" not be offended has also been reinforced. *See Kulko v. California Superior Court,* 436 U.S. 84 at 97, 98 S.Ct. 1690 at 1699, 56 L.Ed.2d 132 (1978) ("basic considerations of fairness" emphasized); *Rush v. Savchuk,* 444 U.S. 320, 329, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980) (defendant must engage in "purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable"). Particularly, the court in *World–Wide Volkswagen Corp. v. Woodson* linked the "fair and reasonable" requirement with the ability of the defendant to foresee that its conduct would make it amenable to suit in the forum. 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980). In *World–Wide Volkswagen,* the court found that "it was not unreasonable to subject [defendant] to suit in ... the [forum] if its defective merchandise has been the source of injury ... and where the corporation delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." 444 U.S. 286 at 296, 100 S.Ct. 559 at 566 (citation omitted). The court explained the "foreseeability" factor as requiring contacts between the defendant and the forum to have been fairly extensive for personal jurisdiction to obtain. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). For "general jurisdiction" to obtain, contacts must be "continuous and systematic." *Id.* In contrast, a court may exercise "specific jurisdiction" when a particular suit arises out of the defendant's activities with the forum state. *Id.* In such a case, the contacts need not be so extensive, but "the 'fair warning' requirement inherent in due process still demands that the defendant have 'purposefully directed' its activities at the forum." *Keeton v.*

*Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

Federal courts sitting in diversity jurisdiction look to a defendant's "minimum contacts" with the state in which they sit to find out whether personal jurisdiction comports with constitutional due process. *Bally Export Corporation v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir.1986). However, when dealing with a federal question rather than sitting in diversity jurisdiction, courts look to a defendant's contacts throughout the United States rather than only contacts with the forum state where they are sitting. *See United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534–35 (7th Cir.1991) (Judge Easterbrook stating, *in dicta*, that the Seventh Circuit favors minority approach of looking to minimum contacts with the United States, not forum state, when reviewing personal jurisdiction in federal question cases); *see also Stafford v. Briggs*, 444 U.S. 527, 554, 100 S.Ct. 774, 789, 63 L.Ed.2d 1 (1980) (Justice Stewart, in dissenting opinion joined by Justice Brennan, reaching "national contacts" question and holding that due process "requires only certain minimum contacts between the defendant and the sovereign that has created the court."); *but see Kozlov v. Conklin (In re Hunt's Pier Associates)*, 156 B.R. 464, 467 (Bankr.E.D.Penn.1993) (holding that court did not have jurisdiction because Ontario corporation only had dealings with New Jersey and not Pennsylvania where bankruptcy court was located); *R.M.R. Corporation v. Clare Brothers, Ltd.*, 133 B.R. 759, 763 (Bankr.D.Md.1991) (holding that a bankruptcy court should look to a foreign defendant's contacts with the forum state rather than total contacts with the United States); *August v. HBA Life Insurance Company (In re August)*, 17 B.R. 628, 630 (Bankr.E.D.Va. 1982) (same).

In *Ace Pecan Company, Inc. v. Granadex International Ltd., (In re Ace Pecan Company)*, Judge Sonderby, through thoughtful and accurate reasoning, followed authorities suggesting a test of "aggregate contacts" with the United States to determine whether the bankruptcy court had personal jurisdiction over a Swiss company. 143 B.R. 696 (Bankr.

N.D.Ill.1992) (Sonderby, J.). This Court similarly will look to whether each Defendant had minimum aggregate contacts within the United States rather than limiting inquiry to contacts within Illinois.

### The Fairness and Reasonableness Test

In international cases, courts must be satisfied as to the fairness and reasonableness of requiring a defendant to appear in a United States court, *Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 293 (3d Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985), although "the interstate federalism concerns which animate fourteenth amendment due process under *International Shoe* and its progeny are diminished in the fifth amendment context." 762 F.2d at 294 n. 4 (citations omitted). *See also* Lilly, *Jurisdiction over Domestic and Alien Defendants*, 69 Vanderbilt and. L.Rev. 85 (1983). Thus, considerations in applying the "aggregate contacts" analysis must include analysis of the fairness and reasonableness of requiring the foreign defendant to appear in the United States. *In re Ace Pecan*, 143 B.R. at 701.

### Both Tests are Satisfied Here and Warrant Exercise of In Personam Jurisdiction

The Committee's uncontroverted evidence proved that both Defendants have conducted and continue to conduct substantial business in the United States and also in Illinois. At the June 1, 1995, evidentiary hearing, the Committee introduced into evidence documents proving 14 different shipments of bicycle locks by Ming–Tay to the Illinois-based Debtor at various destinations in the United States from November 1990 through July 1992, aggregating over $190,-00.00. Plaintiff's Exs. 1–12. The Debtor's Assistant Treasurer, Mr. Gary E. Thorholm, testified that Ming–Tay shipped goods to the Debtor worth approximately $500,000.00 in 1992 and generally shipped to the Debtor about $600,000.00 worth of goods annually. *See* Transcript from June 1, 1995, Evidentiary Hearing (Plaintiff's Ex. 26), pp. 34 and 54. The Committee also introduced into evidence documents proving 11 shipments of bicycle

frames by Fairly to the Debtor at various destinations in the United States from June 1990 through September 1992, aggregating over $500,000.00. Plaintiff's Exs. 13–24. The Committee's uncontroverted evidence indicated further that a number of the shipments made by the Defendants were made to locations within the Northern District of Illinois. In addition, both Defendants continue to sell their products in the United States at the present time. Plaintiff's Ex. 26, pp. 38 and 44. Fairly Bike still sells folding frame bicycles to the United States under the Montague brand name. This testimony is substantiated by two invoices which the Committee has submitted and which were admitted as exhibits. These two invoices were sent to Schwinn by Fairly Bike with the Montague Corporation address on them for folding bicycle frames shipped to Schwinn. Plaintiff's Exs. 23, 24. Moreover, the Debtor made the alleged preferential transfers involved here to the Defendants under letters of credit issued by Harris Bank, which is located in Chicago. Plaintiff's Ex. 26, pp. 28 and 52.

Both Defendants had and still have sufficient aggregate contacts with Illinois and with the United States for this Court's exercise of personal jurisdiction (both "general" and "specific") over them in this adversary proceeding to comport with the due process requirements of the Fifth Amendment. Both Defendants have conducted, and continue to conduct, substantial amounts of business in the United States. Any company that deals internationally with a United States company and repeatedly sells a substantial quantity of goods here has to expect possible consequences under United States law as applied by United States courts. The fact that Defendants profess to be shocked by the notion that a payment, once made and accepted in good faith, may somehow be reversed under United States bankruptcy law, is neither surprising nor relevant. This concept shocks many Americans, and surprises many who are not aware of their potential loss under that law. However, it is not unreasonable to expect any company dealing in international sales to research applicable law before they enter a market. Once entering a market to a significant extent, they have to bear the same legal consequences as all others in the market. They can hardly expect United States courts to find them to hold greater rights than United States companies that participate in the same market. These two Defendants repeatedly entered the United States market; they sold a significant amount of goods here; and they have to be subject to the rules of this market which include, of course, the Bankruptcy Code of the United States.

On the present record, applying Fifth Amendment standards, it is both lawful and reasonable to require Defendants to answer to this lawsuit.

### 3. *Defendants' Motions to Strike Requests to Admit and for Reconsideration*

Pursuant to the pretrial order entered in this proceeding on July 17, 1995, the Committee served Defendants' local counsel with Requests to Admit under Fed.R.Bankr.P. 7036, which adopts Fed.R.Civ.P. 36. On August 9, 1995, Defendants filed Motions to Strike the Requests to Admit. They argued that service of the Requests to Admit on their counsel was improper, and that Taiwanese law controls discovery requests. Those motions were denied by oral ruling, and all of Plaintiff's Requests were deemed admitted during the hearing. Defendants then filed separate but substantially similar Motions for Reconsideration of the Court's Ruling on Requests to Admit. For reasons stated below, an order was entered on September 18, 1995, granting Fairly leave to amend its answer to item 5 of the Committee's Request to Admit and similarly granting Ming–Tay leave to amend its answer to item 7 of the Request to it, but otherwise denying the requested reconsideration.

Bankruptcy Rule 7036 applies to the discovery procedures for this adversary proceeding. Under Rule 7036 (which adopts Fed.R.Civ.P. 36), every matter requested to be admitted is ordinarily deemed admitted unless denied within thirty days after service of the request, provided that without leave of court or a written stipulation a request for admission may not be served before the time specified in Rule 26(d). However, under Lo-

cal Bankruptcy Rule 423 A adopted in this District, the Bankruptcy Court has opted out of Rule 26(d) subject to authority of individual judges to apply that Rule to particular cases or proceedings. Thus, there was no need in this contested jurisdictional dispute for court approval of the service by Plaintiff of the Requests for Admission. Defendants had ample time to answer the requests or to request an extension of time to do so, but they initially relied only on their objection to the service of the Request and failed to file a timely answer, or offer any answer, until the hearing was almost over.[19]

 A court may permit a party to file answers after the expiration of the 30–day period, "where the delay was not caused by any lack of good faith and the untimely response will not unduly prejudice the requesting party." 4 James W. Moore et al., *Moore's Federal Practice,* § 36.05(4), nn. 4 & 5. The delay of Defendants in filing answers was not found to have been caused by a lack of good faith. However, except for those Requests as to which late answers were allowed, the Plaintiff would have been prejudiced by allowing late denials just before completion of the evidentiary hearing. Moreover, even if the Motion for Reconsideration were to be granted, most of the Answers as tardily submitted would not block admission of the Requests. For example, the Committee asked admission that on certain dates Fairly Bike and Ming–Tay were each delivered a Chinese language translation of the summons and complaint in this Adversary case. Both Defendants sought to file a late answer that "[n]one of the officers or general agents were authorized by appointment or by law to have been served the summons." That proposed response was an argument, not a denial of the fact requested, and would not serve to effect a denial. *See* 4

James W. Moore, et al., *Moore's Federal Practice,* ¶ 36.05 & .06. Defendants use the same proposed answer to most of the Requests. Thus, only one proposed late answer was allowed to each Defendant, namely the answers to Request No. 5 of the Fairly Bike Requests and Request No. 7 of the Ming–Tay Requests. Those late answers were found to be both responsive to the requests and not prejudicial. However, neither of those answers improved Defendants' legal position since the Committee was able to show proper service and personal jurisdiction without use of those requested admissions.

### Fed.R.Civ.P. 4(m) Does Not Block This Action

 The Defendants also argued in their Motion for Reconsideration, filed on September 7, 1995, that the complaint against them should be dismissed because of lack of prosecution under new Fed.R.Civ.P. 4(m). However, as noted above, there was a delay in adopting into the Bankruptcy Rules the amended Fed.R.Civ.P. 4, so former Rule 4(j) applied until after the hearing concluded. Old Rule 4(j) generally allowed a court to dismiss an action if the summons and complaint were not served within 120 days after filing of the complaint. However, that section, by its express language, did not apply to service in a foreign country as is the case here.[20] *Cf. Montalbano v. Easco Hand Tools, Inc.,* 766 F.2d 737, 740 (2d Cir.1985) (holding that Rule 4(j)'s exemption for service in foreign countries did not apply where service under Rule 4(i) was never attempted). Since this case was not improperly prosecuted under former Rule 4(j), it would be most unfair to apply new Rule 4(m) retroactively to defeat this case, and discretion will not and should not be exercised to allow that.

19. The Defendants were served with the requests on July 17, 1995. Since then and until September 7, 1995, Defendants did not ask for an extension of time to answer the Requests in case their Motions to Strike were denied.

20. Rule 4(j) of the Federal Rules of Civil Procedure states:

(j) **Summons Time Limit for Service.** If a service of the summons and complaint is not made upon a defendant within 120 days after

the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. *This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.* (Emphasis added.)

Thus, on September 19, 1995, and by separate order, the Motion to Reconsider was denied in all respects.

### *CONCLUSION*

For the foregoing reasons, venue properly lies in this Court as does subject matter and general as well as specific personal jurisdiction. The Committee properly effected service of process on these two Defendants. Accordingly, their Motions to Dismiss are by separate order each denied, and they·are ordered to file Answers to the Complaint.